**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**TANYA FARR,**

           **Plaintiff,**                                **CASE NO.:**

**v.**

**ROOMS TO GO, INC.,**

           **Defendant.**

_____/

## COMPLAINT

Plaintiff, TANYA FARR, by and through her undersigned counsel, hereby

sues Defendant, ROOMS TO GO, INC., and states as follows:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§

1331 and 1343, as this action arises under the Americans with Disabilities Act of

1990, as amended, 42 U.S.C. § 12101 et seq.; and the Family and Medical Leave Act

of 1993, 29 U.S.C. § 2601 et seq.

2.      Venue lies within the United States District Court for the Middle

District of Florida, Tampa Division, because a substantial part of the events giving

rise to this claim occurred in this Judicial District and is therefore proper pursuant

to 28 U.S.C. § 1391(b).

## PARTIES

3.      Plaintiff, TANYA FARR (hereinafter as "Plaintiff"), is an individual residing in Hillsborough County, Florida. At all times relevant, she was employed by Defendant as Spare Parts Admin Manager at Defendant's Seffner, Florida facility.

4.      Defendant, ROOMS TO GO, INC. (hereinafter as "Defendant"), is a furniture retailer doing business in Seffner, Hillsborough County, Florida, with its facility located at 11540 Hwy 92 East, Seffner, FL 33584.

5.      At all times relevant to this action, Defendant employed more than fifty employees within seventy-five miles of Plaintiff's worksite and constitutes a covered employer within the meaning of the FMLA.

## GENERAL ALLEGATIONS

6.      At all times material, Defendant acted with malice and reckless disregard for Plaintiff's federally protected rights.

7.      At all times material, Plaintiff was qualified to perform her job duties within the legitimate expectations of her employer.

8.      Plaintiff has retained the undersigned counsel to represent her in this action and is obligated to pay them a reasonable fee for their services.

9.      Plaintiff requests a jury trial for all issues so triable.

## ADMINISTRATIVE PREREQUISITES

10.      Plaintiff has exhausted her administrative remedies with respect to

her ADA claims by timely filing a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"), which was assigned EEOC Charge Number 511-2026-03913.

11.    Plaintiff has received a Notice of Right to Sue from the EEOC and has exhausted all administrative prerequisites necessary to bring her Title VII claims in this Court.

## FACTUAL ALLEGATIONS

12.    Plaintiff was employed by Defendant continuously from December 19, 1994 through March 2, 2026, a period exceeding thirty-one years. At the time of her termination, Plaintiff held the position of Spare Parts Admin Manager at Defendant's Seffner facility. For approximately twenty-six years prior, she served as a supervisor in Customer Care.

13.    By virtue of her more than thirty-one years of continuous employment and her schedule of forty hours per week, Plaintiff was an eligible employee under the FMLA at all times relevant to this action.

14.    Throughout her thirty-one-year tenure, Plaintiff maintained an untarnished employment record. Prior to the events described herein, Plaintiff had never received a verbal warning, written warning, or any form of progressive discipline.

15.    In approximately January 2025, David Burmeister assumed the role of Plaintiff's direct manager.

16.    In October 2025, Plaintiff's husband underwent surgery to remove a tumor at Moffitt Cancer Center in Tampa, Florida. This surgery and the subsequent recovery period constituted a serious health condition of a spouse within the meaning of the FMLA.

17.    Prior to and in anticipation of her husband's surgery, Plaintiff sought FMLA leave and intermittent leave was approved by Defendant's Leave Department. HR representative Sully Sarita confirmed to Plaintiff that the approved intermittent leave could be converted to continuous leave if necessary.

18.    Plaintiff requested a reasonable accommodation to work remotely during a portion of her husband's recovery so that she could continue working while assisting with his care. HR representative Sarita acknowledged the request as reasonable and presented multiple alternatives to management, including a flexible schedule alternating between on-site and remote workdays.

19.    Burmeister and Director Andrew Day rejected every accommodation alternative proposed by HR.

20.    On or about October 15, 2025, Plaintiff's husband underwent his scheduled surgery. On October 16, 2025, Plaintiff began working from home based on her reasonable understanding that Burmeister had verbally approved a phased

remote arrangement when he stated, "let's start with the first 2 weeks, then 3 and go from there."

21.    On October 16, 2025, Burmeister called Plaintiff at home and denied that he had approved remote work. He offered Plaintiff what he referred to as "mutual consent days" in lieu of the previously discussed arrangement. Plaintiff utilized available mutual consent days but was then informed that no further such days were available and that her FMLA leave would begin immediately.

22.    As a result of Burmeister's management of this leave period, including his reversal of what Plaintiff reasonably understood to be approval, his contradictory communications, and management's categorical refusal to permit remote work despite HR stating it would be a reasonable accommodation, Plaintiff felt compelled to return to the office on October 21, 2025, forgoing the benefit of leave to which she was entitled.

23.    On February 23, 2026, Plaintiff's mother was transported to the emergency room after suffering a stroke or cardiac event. Plaintiff's mother was admitted to the hospital and remained in serious condition. This condition constituted a serious health condition of a parent within the meaning of the FMLA.

24.    On the morning of February 23, 2026, Plaintiff promptly notified Burmeister that she would not be reporting to work and explained that her mother had been rushed to the hospital. During that same conversation, Plaintiff

mentioned the possible need for FMLA leave depending on the outcome of her mother's condition.

25.    On February 26, 2026, Plaintiff attended a meeting with Burmeister and Sarita. During that meeting, Plaintiff provided an update on her mother's continued serious condition, noting that her mother had been hospitalized for four days without significant improvement. Sarita affirmatively encouraged Plaintiff to exercise her FMLA rights, confirmed that Plaintiff was eligible for FMLA leave given the circumstances, and urged her to do what was necessary to care for her mother.

26.    At the conclusion of the February 26 meeting, Plaintiff stated that she would complete and submit her FMLA paperwork when she returned to work on Monday, March 2, 2026. Neither Burmeister nor Sarita raised any objection to this plan. No disciplinary action of any kind was issued at or in connection with this meeting.

27.    On February 27, 2026, Plaintiff was off from work. She texted Burmeister at 5:53 a.m. to notify him that she was inputting a personal day request in ADP so that she could be at the hospital to meet with her mother's physicians. Burmeister replied thanking her for submitting the request.

28.     On March 2, 2026, Plaintiff returned to work as planned and, after lunch, began completing the FMLA application online in accordance with the plan she had communicated to Burmeister and Sarita on February 26.

29.     Before Plaintiff could complete and submit her FMLA application, she received a call from Sarita asking her to come to the HR office. No reason was provided for the meeting.

30.     Upon arriving at the HR office, Burmeister informed Plaintiff that she was being terminated effective immediately for "gross misconduct," "misappropriation of company funds," and "falsifying a timecard."

31.     Defendant thus terminated Plaintiff's employment on the same day she was actively in the process of completing her FMLA paperwork and within four days of the meeting at which FMLA leave was affirmatively discussed and encouraged. Defendant's termination directly and immediately cut off Plaintiff's ability to exercise her FMLA rights.

32.     The stated grounds for Plaintiff's termination arose out of a meeting held on February 26, 2026, concerning a supplemental weekly bonus Plaintiff had paid to her lead associate, Dylan Robinson, for approximately two years.

33.     Plaintiff built the Spare Parts department from the ground up beginning in 2022. At that time, no written policies or procedures of any kind governed the department, including no written bonus policy. Plaintiff modeled a

supplemental bonus structure on comparable practices in other Defendant departments, discussed the structure with her then-manager and HR personnel, and was never told the payments were impermissible.

34.   All bonus payments were entered by Plaintiff in Defendant's ADP payroll system, where they were visible to HR, the Payroll Department, Burmeister, and other management personnel at all times.

35.   During the February 26, 2026 meeting, Burmeister acknowledged that no bonus documentation is provided to distribution center employees at onboarding or during training. Burmeister also admitted that he had been aware of the bonus payments for "a couple of months" before the meeting yet had not notified Plaintiff that the payments were improper and had continued to allow the entries to be made.

36.   The February 26 meeting was not characterized as disciplinary, and no warning, discipline, or notice of potential termination was issued at that meeting or at any prior time during Plaintiff's thirty-one-year employment.

37.   The decision to terminate Plaintiff, rather than counsel, warn, or otherwise permit her to correct the conduct, was made abruptly and without prior notice, on the very day Plaintiff was completing her FMLA paperwork and within four days of the meeting at which her FMLA entitlement was discussed and encouraged.

8

38.     The close temporal proximity between Plaintiff's protected activity and her termination, combined with Defendant's failure to provide any prior discipline and Burmeister's months-long awareness of the bonus payments without action, demonstrates that the stated reasons for Plaintiff's termination are pretextual and that the actual motivation was interference with and retaliation for Plaintiff's exercise of her rights protected under the ADA and the FMLA.

## COUNT I
## DISABILITY DISCRIMINATION
### (Under the Americans with Disabilities Act of 1990, as amended)

39.     Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1 through 38.

40.     Plaintiff is an individual entitled to protection under the Americans with Disabilities Act, as amended, 42 U.S.C. § 12112 et seq.

41.     Plaintiff is an employee within the meaning of the Americans with Disabilities Act, as amended.

42.     Plaintiff is a qualified individual with a disability within the meaning of the Americans with Disabilities Act, as amended, because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of her position.

43.     By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her

disability, record of a disability, and/or because Defendant regarded her as having a disability, in violation of the Americans with Disabilities Act, as amended. Specifically, Defendant terminated Plaintiff's employment.

44. Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional and were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

45. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer lost wages, lost benefits, lost earning capacity, emotional distress, and other damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for back pay, front pay, compensatory damages, punitive damages, attorney's fees and costs, and all other relief deemed just and equitable.

<u>**COUNT II**</u>
<u>**FAILURE TO ACCOMMODATE**</u>
<u>**(Under the Americans with Disabilities Act of 1990, as amended)**</u>

46. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1 through 38.

47. Plaintiff is an individual entitled to protection under the Americans with Disabilities Act, as amended, and was an employee within the meaning of the Act.

48. Plaintiff is a qualified individual with a disability within the meaning

of the Americans with Disabilities Act, as amended, because Plaintiff, with a reasonable accommodation, could perform the essential functions of her job with Defendant.

49. By the conduct described above, Defendant engaged in unlawful employment practices in violation of the Americans with Disabilities Act, as amended, took adverse employment actions against Plaintiff, and discriminated against Plaintiff because of her disability. Further, Plaintiff was denied a reasonable accommodation in violation of the Act and Defendant failed to engage in a good-faith interactive process.

50. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for back pay, front pay, compensatory damages, punitive damages, attorney's fees and costs, and all other relief deemed just and equitable.

## COUNT III
### RETALIATION
### (Under the Americans with Disabilities Act of 1990, as amended)

51. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1 through 38.

52. Plaintiff engaged in protected activity under the Americans with Disabilities Act by requesting a reasonable accommodation.

53.     Plaintiff suffered an adverse employment action, namely termination, for opposing an employment practice and for requesting a reasonable accommodation, which action is unlawful pursuant to the Americans with Disabilities Act, as amended, 42 U.S.C. § 12112, *et seq.*

54.     The above-described acts constitute retaliation, in violation of the Americans with Disabilities Act.

55.     As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for back pay, front pay, compensatory damages, punitive damages, attorney's fees and costs, and all other relief deemed just and equitable.

## COUNT IV
## INTERFERENCE IN VIOLATION OF THE
## FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. § 2615(a)

56.     Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1 through 38.

57.     Plaintiff is an individual entitled to protection under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*

58.     Plaintiff is an eligible employee within the meaning of the FMLA because Plaintiff worked for Defendant for more than twelve (12) months and had at least 1,250 hours of service for Defendant during the twelve (12) months

immediately preceding her FMLA leave.

59.    Defendant is a covered employer within the meaning of the FMLA.

60.    Defendant interfered with Plaintiff's lawful exercise of her FMLA rights by, among other things, failing to permit her to take leave to which she was entitled, terminating her employment on the very day she was completing her FMLA paperwork, and cutting off her ability to complete the leave process, and by failing to restore Plaintiff to the same or an equivalent position.

61.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiff, Tanya Farr, prays for judgment against Defendant, Rooms To Go, Inc., for back pay and benefits, prejudgment interest on back pay and benefits, front pay and benefits, liquidated damages, attorney's fees and costs, injunctive relief, and any other relief this Court deems just and equitable.

## COUNT V
## RETALIATION IN VIOLATION OF THE
## FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. § 2615(a)

62.    Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1 through 38.

63.    Plaintiff exercised and sought to exercise her rights under the FMLA by requesting and initiating leave to care for her spouse and her mother, each of whom had a serious health condition within the meaning of the FMLA.

13

64. Defendant retaliated against Plaintiff in violation of the FMLA in that Plaintiff's request for and utilization of qualified FMLA leave was a substantial or motivating factor that prompted Defendant to terminate Plaintiff's employment.

65. Defendant's actions constitute a violation of the FMLA.

66. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiff, Tanya Farr, prays for judgment against Defendant, Rooms To Go, Inc., for back pay and benefits, prejudgment interest on back pay and benefits, front pay and benefits, liquidated damages, attorney's fees and costs, injunctive relief, and any other relief this Court deems just and equitable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Tanya Farr, respectfully requests that this Court enter judgment in her favor and against Defendant, Rooms To Go, Inc., and award the following relief:

a. Back pay and lost wages, including the value of lost benefits and bonus compensation;

b. Front pay or reinstatement;

c. Compensatory damages for emotional distress, pain and suffering, and loss of enjoyment of life;

d. Punitive damages for Defendant's willful and malicious conduct;

14

e.    Liquidated damages under the FMLA;

f.    Prejudgment interest;

g.    Attorney's fees and costs; and

h.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, Tanya Farr, demands a trial by jury on all issues so triable.

Dated this 20th day of July, 2026.

**FLORIN | GRAY**

*/s/ Troy Longman, II*
**TROY LONGMAN, II, ESQUIRE**
Florida Bar No.: 1031921
Primary: tlongman@floringray.com
Secondary: debbie@floringray.com
**WOLFGANG FLORIN, ESQUIRE**
Florida Bar No.: 907804
Primary: wflorin@floringray.com
16524 Pointe Village Drive, Suite 100
Lutz, FL 33558
Telephone: (727) 220-4000
Facsimile: (727) 483-7942
*Attorneys for Plaintiff*

15